IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

PAUL HERMANN, §
§
    Plaintiff, §
§
V. § No. 3:22-cv-2557-L
§
HEWLETT PACKARD ENTERPRISE §
COMPANY d/b/a HEWLETT- §
PACKARD FINANCIAL SERVICES §
COMPANY, §
§
    Defendant. §

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Hewlett Packard Enterprise Company d/b/a Hewlett-Packard Financial Services Company ("HPE") has filed a Motion for Protective Order Regarding Plaintiffs Second Amended Notice of Oral Deposition of Defendants Corporate Representative. *See* Dkt. No. 54 (the "MPO").

HPE seeks an order preventing Plaintiff Paul Hermann from questioning HPE on all 51 topics in Plaintiff's Second Amended Notice of Deposition of Defendant Hewlett Packard Enterprise Company under Federal Rule of Civil Procedure 30(b)(6). (The Second Amended Notice, served after the parties conferred regarding Hermann's original topics, includes Topics 1-35 and 37-52 but omits a Topic 36.)

HPE contends that Hermann is seeking to obtain discovery far beyond the proportional confines of this action and to take a duplicative deposition of his former manager Shannon Walker in an attempt to circumvent Federal Rule of Civil Procedure 30(d)(1)'s 7-hour limit on a witness's deposition testimony.

HPE requests, in the alternative, that the Court limit the scope of the topics to questions not previously asked of Walker, limit the scope of the topics to the extent they are overly broad or duplicative of other discovery, or limit the timing and/or geographic location of any corporate deposition to prevent further harassment.

Hermann filed a response, *see* Dkt. Nos. 74 & 75, and HPE filed a reply, *see* Dkt. No. 83.

To the extent and for the reasons explained below, the Court now grants in part and denies in part HPE's MPO [Dkt. No. 54].

## Legal Standards

The Court has laid out the standards that govern a Federal Rule of Civil Procedure 26(c) motion for protective order, and the Court incorporates and will apply – but will not repeat – those standards here. *See McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242-45 (N.D. Tex. 2016).

Under Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6), "[a] party who wants to depose a person by oral questions must give reasonable written notice to every other party," and, "[i]n its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination." FED. R. CIV. P. 30(b)(1), 30(b)(6).

The United States Court of Appeals for the Fifth Circuit has explained in this context of a Federal Rule of Civil Procedure 30(b)(6) deposition of a corporate representative that "Rule 30(b)(6) is designed to avoid the possibility that several

officers and managing agents might be deposed in turn, with each disclaiming personal knowledge of facts that are clearly known to persons within the organization and thus to the organization itself." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 432-33 (5th Cir. 2006) (cleaned up).

"Therefore, the deponent must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the party noticing the deposition] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed ... as to the relevant subject matters." *Id.* at 433 (cleaned up).

And "[t]he duty to present and prepare a Rule 30(b)(6) designee goes beyond matters personally known to that designee or to matters in which that designee was personally involved. The deponent must prepare the designee to the extent matters are reasonably available, whether from documents, past employees, or other sources." *Id.* (cleaned up).

"For Rule 30(b)(6) to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Dennis v. United States*, No. 3:16-cv-3148-G-BN, 2017 WL 4778708, at *7 (N.D. Tex. Oct. 23, 2017) (cleaned up).

And, so, "Rule 30(b)(6) requires that a party seeking to depose an organization 'must describe with reasonable particularity the matters for examination.'" *Id.* (quoting FED. R. CIV. P. 30(b)(6)). "Otherwise, an overly broad Rule 30(b)(6) notice

may subject the noticed party to an impossible task. If the noticed organization cannot identify the outer limits of the areas of inquiry noticed, compliant designation is not feasible." *Id.* (cleaned up).

And, as recently amended, Rule 30(b)(6) requires that, "[b]efore or promptly after the notice or subpoena is served, the serving party and the organization must confer in good faith about the matters for examination." FED. R. CIV. P. 30(b)(6).

### Analysis

## I.     HPE's general arguments to preclude or limit the deposition

HPE's suggesting that not one of the Second Amended Notice's 51 Rule 30(b)(6) topics passes muster may be, at first blush, surprising.

But HPE maintains that it "will easily meet its burden to establish legitimate, nondiscriminatory reasons for Hermann's termination" and that Hermann understands that, too, and, so, is pressing forward in this litigation only "to pursue burdensome, duplicative, disproportionate, and harassing discovery of HPE to try to drum-up anything to support a finding of pretext." HPE explains that, in seeking extensive Rule 30(b)(6) testimony from a corporate representative who Hermann knows will be Walker on many of the topics, Hermann is pursuing a "tactic [that] is harassing and disproportionate to the needs of this single-plaintiff age discrimination case, particularly here where the strategy is clearly geared toward the improper second-guessing of the business decisions of Walker."

HPE then argues that, because "Hermann already took a full 7-hour deposition of Walker on September 11, 2024, and questioned him extensively regarding

Hermann's performance (including relative to the other FAMs on his team), the PIP, the Performance Warning, and Walker's decision to terminate Hermann," "Hermann should be precluded from deposing Walker on the exact same topics again at a Rule 30(b)(6) deposition."

To start, this latter argument fails to persuade.

As the cases that HPE cites note, courts have "recognized a second deposition is not improper in the [] situation in which a deposition was first taken of a witness in an individual capacity and then a second deposition was sought of a witness in a representative capacity." *Sw. Bell Tel., L.P. v. UTEX Commc'ns Corp.*, No. A-07-CV-435 RP, 2009 WL 8541000, at *2 (W.D. Tex. Sept. 30, 2009) (citing cases).

And, because "deposition testimony under Rule 30(b)(6) is distinct from deposition testimony of other witnesses," "discovery under Rule 30(b)(6) is not duplicative or cumulative simply because individual deponents have testified about the topics noticed in the Rule 30(b)(6) deposition notice." *MC Trilogy Tex., LLC v. City of Heath, Tex.*, No. 3:22-cv-2154-D, 2024 WL 1641233, at *5 (N.D. Tex. Apr. 16, 2024).

On the Second Amended Notice, Walker is not the noticed deponent for this Federal Rule of Civil Procedure 30(b)(6) deposition; HPE is. And, so, the deposition is subject to a separate Federal Rule of Civil Procedure 30(d)(1) 7-hour limit.

And Hermann may properly seek testimony from HPE – through whichever representatives HPE deems appropriate under Rule 30(b)(6)'s standards (as laid out above) – that will bind HPE and that will be based on "the knowledge of [the] entire organization and its positions on matters relevant and discoverable" and for which

HPE must "prepare and produce all reasonably available information from documents, past employees, or other sources." *MC Trilogy*, 2024 WL 1641233, at *5.

The Court will not preclude Hermann from seeking HPE's corporate representative testimony on topics on which Walker already testified.

HPE also asserts that the remaining topics (on which Walker individually was not already deposed) "are hopelessly overbroad, invade on the attorney client privilege and/or work product protection, fail to identify the topics of examination with reasonable particularity, or are harassing and duplicative of discovery already conducted by Hermann and thus disproportionate to the needs of this basic age discrimination claim."

Hermann's Second Amended Notice "is also subject to limitations under" Federal Rule of Civil Procedure 26, including Rules 26(b)(1) and 26(b)(2)(C). *MC Trilogy*, 2024 WL 1641233, at *3.

But "a party cannot refuse to engage in – and is not excused from being subjected to – discovery simply because the discovery is relevant to a claim on which the resisting party believes that [it] will or should prevail." *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018). "The Court will not prematurely assess the balance of the evidence on the merits of [Hermann's] claim against [HPE] and will not credit [HPE's] assessment to cut off [Hermann] from seeking relevant evidence from this named party before discovery has closed and any summary judgment motion has been filed." *Velazquez v. El Pollo Regio LP, LLC,* No. 3:15-cv-3170-M, 2017 WL 2289185, at *6 (N.D. Tex. May 25, 2017).

Insofar as HPE may be asking the Court to do so on this discovery motion by arguing, for example, that Hermann "cannot support his claims with any actual evidence," Dkt. No. 83 at 1, "the Court will not engage in a preemptive merits analysis to determine whether [Hermann] is entitled to discovery on the claim that it has pleaded and is pursuing," *Randstad Gen. Ptr. (US), LLC v. Beacon Hill Staffing Grp., LLC*, No. 3:20-cv-2814-N-BN, 2021 WL 4319673, at *1 (N.D. Tex. Sept. 23, 2021) (cleaned up).

HPE suggests that, alternatively, the Court should limit the timing and/or geographic location of any corporate deposition to prevent further harassment.

But HPE's MPO provides no further explanation or justification for this alternative request. *See* Dkt. No. 55 at 7, 18 of 30.

HPE does, for the first time in a footnote in its reply, state that, "[i]f topics remain related to Mr. Walker, the deposition should take place in New Jersey, where he resides, or via zoom, since Plaintiff rejected HPE's offer to bring him to Dallas on September 27, 2024." Dkt. No. 83 at 2 n.2. But the Court will not consider this argument developed for the first time in a reply brief. *See Robles v. Eminent Med. Ctr., LLC*, 619 F. Supp. 3d 609, 626 (N.D. Tex. 2022).

## II.    HPE's objections to the itemized Rule 30(b)(6) topics

Turning to the itemized topics for Rule 30(b)(6) testimony, the Court will address HPE's objections to the topics as the parties have categorized them.

### A.  Topics 1-3

1.    The factual basis for the statements admitted or denied in HPE's Original Answer and any amended or supplemental answers filed

in this case
2.    The factual basis for any affirmative defenses asserted by HPE in this case
3.    HPE's interrogatory answers in this case

HPE objects that Topics 1-3 request testimony about information protected by the attorney client or work product privileges and are simply overbroad.

As to Topics 1-3, contrary to HPE's stated concern, asking for the factual basis for admitting or denying allegations and for affirmative defenses does not improperly tread on work-product protections or attorney-client privilege. *See Dennis*, 2017 WL 4778708, at *9. And Federal Rule of Civil Procedure 30(c)(2) provides procedures for HPE's attorney to object to and, if necessary and appropriate, instruct a corporate representative not to answer if necessary to preserve a privilege.

But the Court finds that, as phrased, these topics are overbroad and fail to describe with reasonable particularity the matters for examination, where asking about the factual basis for every admission or denial in an answer and every affirmative defense and asking, without more explanation, for testimony on every interrogatory answer comes close to, as HPE asserts, asking to "produce a witness to testify regarding HPE's entire case."

"By simply referring generally to [the statements admitted or denied in HPE's Original Answer and any affirmative defenses asserted by HPE in this case and HPE's interrogatory answers in this case] without any distinction as to specific allegations, [Hermann] has not provided reasonably particularized notice such that [HPE] can meet its obligation to prepare its representative." *Waste Mgmt. of Louisiana, LLC v. River Birch, Inc.*, No. CV 11-2405, 2017 WL 2831700, at *3 (E.D.

La. June 30, 2017); *see also Washington-St. Tammany Elec. Coop., Inc. v. Louisiana Generating, L.L.C.*, No. CV 17-405-JWD-RLB, 2019 WL 1804849, at *12 (M.D. La. Apr. 24, 2019) ("The Court agrees with the Customer Cooperatives that Topic 1, which generally refers to LaGen's written discovery, is overly broad, and fails to describe the topic with reasonable particularity.").

The Court grants a protective order to excuse HPE from producing a corporate representative to testify as to Topics 1-3.

**B. Topics 4-8**

4.    HPE's efforts to identify documents responsive to requests for production in this case
5.    HPE's document retention policies for retention of a terminated employee's emails or other documents
6.    HPE's efforts to preserve documents relevant to Paul Hermann's claims after May 21, 2021
7.    The individuals notified by HPE to preserve relevant documents and communications with Paul Hermann following HPE's receipt of the May 21, 2021 letter from Paul Hermann's attorney
8.    The reason(s) HPE did not preserve Paul Hermann's emails following receipt of the May 21, 2021 letter from Paul Hermann's attorney

HPE objects that Topics 4-8 request testimony about information protected by the attorney client and/or work product privileges and are also overbroad and not relevant to this litigation.

As to Topics 4-8, "discovery on discovery" generally is not permitted "unless a specific deficiency is shown in a party's production," and, "[t]o make this showing of a specific or material deficiency in the other party's production … to obtain 'discovery on discovery' that is both relevant and proportional to the needs of the case under Rule 26(b)(1), the requesting party should make a showing … that allows the Court

to make a reasonable deduction that other documents may exist or did exist and have been destroyed." *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 420 (N.D. Tex. 2021) (cleaned up).

Hermann and HPE appear to agree that Hermann's emails were deleted after he was terminated. HPE contends that this was based on pursuant to routine deletion practices (and, more specifically, that Hermann's "badge and IT access['s being] shut off in connection with his termination … would then have subjected his emails to Microsoft 365's practice of deletion withing 30 days of shut-off"); that HPE has responded in good faith to Herman's discovery requests and Hermann has not contended otherwise; and that Hermann has not identified particular emails or categories of emails that have not been produced and that he believes would be relevant to his claims.

Hermann contends that there is a potential issue of spoliation where HPE admits that it did not preserve Hermann's emails even though it knew of Hermann's legal claims by May 21, 2021, which was just three weeks after it fired Hermann.

That is more than just speculation that documents might have been destroyed.

Hermann has not shown a basis for Topic 4, as to which the Court grants a protective order to excuse HPE from producing a corporate representative to testify. But Topics 5-8 are fair game under these circumstances, and they do not improperly tread on work-product protections or attorney-client privilege where a company's document retention policies themselves are not generally protected by privilege or as work product, HPE's efforts to preserve documents in this case may or may not be

protected but can be addressed on a question-by-question basis, and the Court has difficulty accepting that identifying the individuals to whom a litigation hold or document preservation notice was sent and when each was sent would be privileged or protected work product (even if the litigation hold letter or notice itself might be).

The Court denies the MPO as to Topics 5-8.

### C. Topic 9

> 9.    The performance reviews during Paul Hermann's employment with HPE, the documents included in his personnel file, and the wages, and benefits provided to him by HPE during his employment

HPE objects that Topic 9 is overbroad and lacks specificity.

As to Topic 9, the Court disagrees that this topic lacks specificity or fails to give HPE notice of the bounds of what to prepare a representative to testify to. And the Court is not persuaded that testimony regarding Hermann's performance, wages and benefits, and other information in his personnel file cannot be relevant to his claim because Walker only began managing Hermann in FY21.

The Court denies the MPO as to Topic 9.

### D. Topics 10-12 and 22-24

> 10.    The process by which HPE determines and sets the Quotas and Balanced Performance Indicators communicated to each member of the US Public Sector Team managed by Steve Handy or Shannon Walker in FY19, FY20, and FY21
>
> 11.    The margin and dollar amount of profit generated by each territory for the US Public Sector team managed by Steve Handy or Shannon Walker in FY19, FY20, and FY21
>
> 12.    A description of the criteria and/or metrics used by HPE to assess the performance of each member of the US Public Sector team managed by Steve Handy or Shannon Walker in FY19, FY20, and FY21 and the documents in which those criteria and/or metrics

are identified

22. The HPE FY21 Total Margin Sales Plan Summary and FY21 Global Sales Compensation Administrative Guide (produced as HPE000073-93) and any sales plan, sales letter, and related training or guidance provided to Paul Hermann or any employee reporting to Shannon Walker for FY 2021

23. The HPE FY20 Sales Plan Summary (produced as HPE001090-1097) and FY20 Global Sales Compensation Administrative Guide (produced as HPE001098-1114) and any sales plan, sales letter, and related training or guidance provided to Paul Hermann or any employee reporting to Steven Handy for FY 2020

24. The HPE FY19 Sales Plan Summary (produced as HPE002383-2389) and FY19 Global Sales Compensation Administrative Guide (produced as HPE002390-2406) and any sales plan, sales letter, and related training or guidance provided to Paul Hermann or any employee reporting to Steven Handy for FY19

HPE objects that Topics 10-12 and 22-24 are duplicative and burdensome and fail to identify the topics of examination with reasonable particularity.

The Court denies the MPO as to Topics 10-12 and 22-24 because the topics do not leave HPE reasonably wondering about the outer limits of the areas of inquiry; for the reasons that Hermann persuasively explains, he may question a corporate representative about the related documents that HPE has produced; and, as the Court has already explained, Hermann's deposing Walker individually does not preclude his seeking comprehensive and binding testimony from HPE itself on these relevant matters.

### E. Topics 13-15, 17-21, 35, and 48

13. A description of HPE's assessment of Paul Hermann's job performance and an explanation of the performance evaluations during his employment with HPE

14. The performance coaching, performance improvement plan, and/or performance warning provided to Paul Hermann during his employment with HPE

15. Communications between HPE Human Resources and Paul

Hermann or Shannon Walker regarding Paul Hermann's performance, performance improvement plan, performance warning, and termination

17. Communications concerning territory plans for Paul Hermann in FY 2021, including, but not limited to, those referenced in the document bates labeled HPE001132

18. Communications concerning portfolio planning for Paul Hermann in FY 2021 including, but not limited to, the portfolio planning referenced in the document bates labeled HPE001203

19. Communications between Paul Hermann and Rodney Minick, Shannon Walker, Brian Johnson, Julie McGuire, Kathryn Giordano, Steve Kopitskie, or Ben Ranieri related to shifting Paul Hermann's focus to AUS and CPO opportunities, including, but not limited to, communications referenced in the document bates labeled HPE001204-1208

20. FAM calls related to Paul Hermann for FY 2021, including, but not limited to, the call and related information referenced in the documents bates labeled HPE001305-1311

21. Communications between Rodney Minick, Shannon Walker, Brian Johnson, Julie McGuire, Kathryn Giordano, Steve Kopitskie, or Ben Ranieri concerning Paul Hermann's work related to AUS and CPO opportunities

35. HPE's job description applicable to Paul Hermann, including, if applicable, the document bates labeled HPE00005, and Paul Hermann's performance in relation to that job description

48. The reasons for, persons involved in, and facts surrounding the termination of Paul Hermann

HPE objects that Topics 13-15, 17-21, 35, and 48 are overbroad, fail to define the topic with reasonable particularity, or are not proportional to the needs of the case.

The Court denies the MPO as to Topics 13-15, 17-21, 35, and 48 because the topics do not leave HPE reasonably wondering about the outer limits of the areas of inquiry; for the reasons that Hermann persuasively explains, he may question a corporate representative about these relevant matters; and, as the Court has already explained, Hermann's deposing Walker individually does not preclude his seeking

comprehensive and binding testimony from HPE itself on these matters.

**F. Topic 16**

> 16.    Performance evaluations, performance coaching, performance improvement plans, and performance warnings provided to any employee reporting to Shannon Walker during FY 2021

HPE objects that Topic 16 is unnecessarily duplicative and cumulative.

The Court denies the MPO as to Topic 16 because, for the reasons that Hermann persuasively explains, he may question a corporate representative about these relevant matters and, as the Court has already explained, Hermann's deposing Walker individually does not preclude his seeking comprehensive and binding testimony from HPE itself on these matters. And, on this discovery motion, the Court will not resolve the parties' dispute as to which, if any, members of a particular team at HPE are appropriate comparators as to Hermann.

**G. Topics 25-26**

> 25.    The addition of and any changes to the asset management quota for sales plans in FY 2019, FY 2020 and FY 2021
> 26.    Any training, guidance, or resources provided to Paul Hermann or other employees reporting to Steve Handy or Shannon Walker regarding the asset management sales expectations or the asset management program in FY 2019, FY 2020 or FY 2021

HPE objects that Topics 25-26 are unnecessarily duplicative and cumulative.

The Court denies the MPO as to Topic 25-26 because, for the reasons that Hermann persuasively explains, he may question a corporate representative about these relevant matters and, as the Court has already explained, Hermann's deposing Walker individually does not preclude his seeking comprehensive and binding testimony from HPE itself on these matters.

-14-

## H. Topics 27-29 and 31

27. Paul Hermann's commission structure for FY 2021, including, but not limited to, commissions he would have earned under the State and Local Government Master Lease Purchase Agreement for Houston ISD (produced as HPE000154-157); any commissions that were paid to any employee related to the State and Local Government Master Lease Purchase Agreement for Houston ISD; and how HPE allocated the commission that would have been paid to Paul Hermann related to the State and Local Government Master Lease Purchase Agreement for Houston ISD but for his termination

28. The closing date, margin quota credit, and attainment percentages earned by HPE or any employee of HPE, or which would have been earned by Mr. Hermann if his employment had continued through the end of FY21, on the following transactions worked on by Paul Hermann prior to his termination:
    a. State of Louisiana                $250,000.00
    b. City of McKinney, Texas           $290,989.00
    c. City of McKinney, Texas           $78,206.00
    d. New Mexico Miliary Institute $1,156,070.00
    e. Houston ISD                       $21,156,000.00
    f. City of Port Arthur, Texas        $640,000.00
    g. Missouri Military Academy         $500,000.00
    h. City of Springfield, MO           $200,000.00
    i. Maricopa County, Arizona          $300,000.00.

29. The commission payments Paul Hermann would have earned on the following transactions if he had remained employed through the end of FY21:
    a. State of Louisiana                $250,000.00
    b. City of McKinney, Texas           $290,989.00
    c. City of McKinney, Texas           $78,206.00
    d. New Mexico Miliary Institute $1,156,070.00
    e. Houston ISD                       $21,156,000.00
    f. City of Port Arthur, Texas        $640,000.00
    g. Missouri Military Academy         $500,000.00
    h. City of Springfield, MO           $200,000.00
    i. Maricopa County, Arizona          $300,000.00

31. The calculation of Paul Hermann's final margins after each transaction on which he worked during FY 2021 that closed after May 7, 2021 is included in his margin calculations on the incentive spreadsheet produced as HPE002410

HPE objects that Topics 27-29 and 31 are overbroad, inappropriate for a Rule

30(b)(6) deposition, and seek the creation of data that does not exist.

As to Topics 27-29 and 31, for the reasons that HPE persuasively explains, the Court finds that the requested testimony is not appropriate for a Rule 30(b)(6) deposition beyond HPE's authenticating the related documents that the parties explain that HPE has agreed to produce. Other than authenticating those documents, the Court grants a protective order to excuse HPE from producing a corporate representative to testify as to Topics 27-29 and 31.

### I. Topics 30 and 32-34

> 30.   Monthly, quarterly, and annual incentive statement spreadsheets regarding any employee reporting to Shannon Walker for FY 2021
>
> 32.   The data contained in and a description of the purpose of and the manner in which the Salesforce and Connector reports pertaining to employees reporting to Shannon Walker in FY 2021, including, but not limited to, the reports produced as HPE000692, HPE000694, and HPE001138 were prepared and used by HPE in FY21
>
> 33.   The data contained in and a description of the purpose of and the manner in which the Gap to Goal spreadsheets and related data related to employees reporting to Shannon Walker in FY 2021, including, but not limited to, the spreadsheets produced as HPE000699 and HPE001342 were prepared and used by HPE in FY21
>
> 34.   The data contained in and a description of the purpose of and the manner in which HPI Opportunity Reports and related communications regarding employees reporting to Shannon Walker in FY 2021, including, but not limited to, those referenced in the documents bates labeled HPE001374-1378 and HPE001423-1424 were prepared and used by HPE in FY21

HPE objects that Topics 30 and 32-34 fail to specify the topic of examination with reasonable particularity.

As to Topics 30 and 32-34, the Court finds that the topics, as framed, do not

present a realistic subject to corporate representative testimony other than to authenticate the produced documents and explain generally what they are (and their purposes), how HPE uses them, and what data they generally contain. But the Court grants in part a protective order to excuse HPE from producing a corporate representative to otherwise testify as to Topics 30 and 32-34.

### J. Topics 37-40

37.   The consideration, evaluation, assessment, interview, selection, and hiring process for any hiring decision made to fill Paul Hermann's position after his termination

38.   The information contained in and related to the Financial Account Manager recruitment document produced as HPE00006-00014

39.   The facts, circumstances, and communications supporting the selection and hiring of Kristi Cooper to replace Paul Hermann after his termination

40.   The job performance and compensation of Kristi Cooper after she was selected to replace Paul Hermann

HPE objects that Topics 37-40 fail to specify the topic of examination with reasonable particularity and are overly burdensome and duplicative.

The Court denies the MPO as to Topic 37-40 because, for the reasons that Hermann persuasively explains, he may question a corporate representative about these relevant matters and, as the Court has already explained, Hermann's deposing Walker individually does not preclude his seeking comprehensive and binding testimony from HPE itself on these matters.

### K. Topics 41 and 49

41.   HPE's COVID-related travel policies applicable to any employee reporting to Shannon Walker in FY 2021

49.   Computer chip shortages and supply chain issues affecting HPE in FY 2020 and FY 2021 and how those issues impacted sales of

> employees reporting to Steve Handy in FY 2020 or Shannon
> Walker in FY 2021

HPE objects that Topics 41 and 49 are overly broad, fail to define the scope of the examination with reasonable particularity, and are not proportional to the needs of the case.

The Court denies the MPO as to Topic 41 and 49 because, for the reasons that Hermann persuasively explains, he may question a corporate representative about these relevant matters and, as the Court has already explained, Hermann's deposing Walker individually does not preclude his seeking comprehensive and binding testimony from HPE itself on these matters.

### L. Topics 42-43

> 42. HPE's diversity, equity, and inclusion policies, practices, and training, including, but not limited to, those referenced in HPE's Living Progress Reports from 2018 through the present
> 43. HPE's policies, practices, and training concerning discrimination, including, but not limited to, the CEO's Equal Employment Opportunity Policy Statement and the Global Non-Discrimination Policy

HPE objects that Topics 42 and 43 are very broad and address entire policies that do not bear on Hermann's claim for age discrimination and that were testified to in a prior deposition.

As to Topics 42-43, the Court finds, for the reasons that HPE explains, these topics are not stated with adequate specificity and do not seek testimony that would be relevant to Hermann's claims or, in any event, proportional to the needs of the case relative to the importance of the information, as requested, to Hermann's claims.

The Court grants a protective order to excuse HPE from producing a corporate

representative to testify as to Topics 42-43.

**M. Topics 44-45**

    44.    Communications by HPE to employees regarding the age discrimination class action lawsuit styled *Donna J. Forsyth, et. al. v. HP Inc. and Hewlett Packard Enterprise Company*, Case No. 5:16-cv-04775, United States District Court, Northern District of California and the settlement of that class action for $18 million dollars

    45.    Communications by HPE CEO Meg Whitman in 2015 regarding workforce reductions to right size the enterprise services business and related to having a labor pyramid with lots of young people coming in right out of college and graduate school, including, without limitation, Ms. Whitman's interview with CNBC's David Faber on "Squawk on the Street"

HPE objects that Topics 44-45 are irrelevant and had no bearing on Mr. Walker's decision to terminate Hermann.

As to Topics 44-45, the Court finds, for the reasons that HPE explains, these topics are not stated with adequate specificity and do not seek testimony that would be relevant to Hermann's claims or, in any event, proportional to the needs of the case relative to the importance of the information, as requested, to Hermann's claims.

The Court grants a protective order to excuse HPE from producing a corporate representative to testify as to Topics 44-45.

**N. Topic 46**

    46.    Communications about, reasons for, and the facts surrounding the termination of Steve Handy from his employment at HPE and the reason Steve Handy's employment at HPE ended in 2020

HPE objects that Topic 46 seeks testimony regarding the private information of a third party who was not a decisionmaker regarding Hermann's termination.

As to Topic 46, the Court is not persuaded that this topic is inappropriate for

Rule 30(b)(6) testimony based on privacy concerns where the Court has entered an agreed protective order [Dkt. No. 46]. And, for the reasons that Hermann explains, he may question a corporate representative about these relevant matters and, as the Court has already explained, Hermann's deposing Walker individually does not preclude his seeking comprehensive and binding testimony from HPE itself on these matters, particularly where Walker and HPE have apparently offered possibly differing accounts.

The Court denies the MPO as to Topic 46.

### O. Topic 47

> 47. Payments made to any HPE employee, following the termination of Paul Hermann, of sales commissions, incentive pay or bonuses concerning transactions that were in Paul Hermann's territory during FY 2021

HPE objects that Topic 47 is irrelevant and overbroad.

The Court denies the MPO as to Topic 47 because the topics does not leave HPE reasonably wondering about the outer limits of the areas of inquiry, and, for the reasons that Hermann persuasively explains, he may question a corporate representative about these relevant matters.

### P. Topics 50-52

> 50. Any electronic, oral, or written communications between Shannon Walker, Brad Shapiro and/or Human Resources regarding Paul Hermann's job performance since January 1, 2020 to the date of his termination
>
> 51. Any electronic, oral, or written communications between Shannon Walker, Steve Handy, Brad Shapiro and/or Human Resources regarding Paul Hermann's performance and/or performance counseling provided to Paul Hermann in FY20 or FY21

> 52. Any electronic, oral, or written communications between Shannon Walker, Brad Shapiro and/or Human Resources regarding the termination of Paul Hermann's employment with HPE

HPE objects that Topics 50-52 are overly burdensome, fail to state the topics for examination with reasonable particularity, or both.

The Court denies the MPO as to Topics 50-52 because the topics do not leave HPE reasonably wondering about the outer limits of the areas of inquiry; for the reasons that Hermann persuasively explains, he may question a corporate representative about these relevant matters; and, as the Court has already explained, Hermann's deposing Walker individually does not preclude his seeking comprehensive and binding testimony from HPE itself on these matters.

## III.    Award of reasonable expenses

Based on the Court's rulings above, the Court determines that, under Federal Rules of Civil Procedure 37(a)(5) and 26(c)(3), the parties will bear their own expenses, including attorneys' fees, in connection with this MPO.

## Conclusion

To the extent and for the reasons explained above, the Court grants in part and denies in part Defendant Hewlett Packard Enterprise Company d/b/a Hewlett-Packard Financial Services Company's Motion for Protective Order Regarding Plaintiffs Second Amended Notice of Oral Deposition of Defendants Corporate Representative [Dkt. No. 54].

The parties should schedule the Rule 30(b)(6) deposition of Defendant Hewlett Packard Enterprise Company d/b/a Hewlett-Packard Financial Services Company on

the Second Amended Notice's topics permitted in whole or in part under this order – specifically, Topics 5-25, 27-34 (as limited above), 35, 37-41, and 46-52 – at a mutually agreeable date and time on or before the parties' agreed-upon extended discovery cutoff deadline of November 8, 2024. *See* Dkt. No. 73. (But, as the Court has noted, "[t]he Scheduling Order allows the parties to agree to continue the discovery deadline but warns that '[t]he court will not entertain any discovery dispute that is a result of an agreed extension by the parties.' Doc. 41 ¶ 7." Dkt. No. 8 at 4 n.2.)

    SO ORDERED.

    DATED: October 31, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE